JAMIR DAVIS, ESQ. SBN 98041 PRO HAC VICE
J. DAVIS LAW FIRM, PLLC
P.O. BOX 122123
COVINGTON, KY 41011
TELE: 859-750-5033
JDAVIS@JDAVISCOUNSEL.COM

VALERY NECHAY, SBN 314752
ATTORNEY AT LAW
LAW CHAMBERS BUILDING
345 FRANKLIN ST.
SAN FRANCISCO, CA 94102
415-652-8569
VALERY@NECHAYLAW.COM

ADANTÉ D. POINTER, ESQ., SBN 236229
PATRICK M. BUELNA, ESQ., SBN 317043
MARLON MONROE, ESQ., SBN 251897
MATTHEW NORMAN, ESQ., SBN 351413
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 FILBERT ST., SUITE 208
OAKLAND, CA 94607
510-929-5400
APOINTER@LAWYERSFTP.COM
PBUELNA@LAWYERSFTP.COM
MMONROE@LAWYERSFTP.COM
MNORMAN@LAWYERSFTP.COM
WWW.LAWYERSFTP.COM

ATTORNEYS FOR PLAINTIFF
DEONTAE CHARLES FAISON BY AND
THROUGH HIS GUARDIAN AD LITEM
THERESA FLORES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEONTAE CHARLES FAISON BY AND THROUGH HIS GUARDIAN AD LITEM THERESA FLORES

Plaintiff,

v.

ALAMEDA COUNTY; EAST BAY REGIONAL PARK DISTRICT; JONATHAN KNEA in his individual capacity ROBERTO FILICE in his official capacity and; DOES 1-40 individually and in official capacities as police officers for the EAST BAY REGIONAL PARKS; Sheriff Deputies for ALAMEDA COUNTY, AND FALCK USA, Inc.

Defendants.

CASE NO: 3:24-cv-06059-JSC

**THIRD AMENDED COMPLAINT FOR DAMAGES**

**JURY TRIAL DEMANDED**

Deleted: ¶

**INTRODUCTION**

1. Police officers are supposed to be trained on the use of weapons and are expected to have an intimate understanding of the potential physical and mental effects of any weapon they use.
2. Officers should be trained that tasers have a direct impact on a person's physical and cognitive functions in that tasers can incapacitate individuals, drastically affecting their ability to comply with an officer's orders and control their body.
3. It is common knowledge that electricity and water are a dangerous combination. Indeed, Officers are trained they should avoid using a taser when a person's position creates an increased risk of injury or when a person is located in water, mud or marsh. It naturally follows that any officer who intentionally uses a taser on a person who is near and/or standing in water must be considered to be showing deliberate indifference for human life, given the potentially lethal consequences of such an action.

4. On April 5, 2024, East Bay Regional Parks Police Department officers tased Deontae Faison in the back multiple times while he was in water. Deontae was unarmed and posed no threat to the East Bay Regional Parks officers or any members of the public. Yet officers tased Deontae anyway, and then watched him scream for help while fighting for his life in the water.
5. East Bay Regional Parks refused to jump in, render any aid, or provide any other type of life saving measure. Instead, Alameda County Sheriff Deputies and East Bay Regional Police Officers stood on the bank of the estuary for 40 minutes and watched Deontae struggle and scream for help until he eventually fell unconscious.
6. East Bay Regional Police officers knew Deontae was injured by their taser and that he "was not going to make it," but did not call for medical help until his lifeless body floated to the opposite bank of the estuary.
7. Approximately an hour after initially being tased Deontae was finally taken to the hospital. At some point between traveling from the scene to the hospital, he was resuscitated by medical personnel.
8. When Deontae arrived at the hospital officers failed to communicate to hospital personnel that Deontae had been tased multiple times in an attempt to conceal the true nature of what happened to him and promote the false narrative that Deontae had simply drowned.
9. As a result, Deontae was never properly treated and to date he tragically remains in a coma.

**JURISDICTION**

10. This action arises under Title 42 of the United States Code, Section 1983. Title 28 of the United States Code, Sections 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in Alameda County, California, which is within this judicial district. Title 28 of the United States Code Section 1391(b) confers venue upon this Court.

**ADMINISTRATIVE PREREQUISITES**

11. DEONTAE CHARLES FAISON was required to comply with an administrative tort claim requirement under California law. DEONTAE CHARLES FAISON served tort claims with COUNTY and DISTRICT pursuant to California Government Code Section 910. DEONTAE CHARLES FAISON filed his claim with the Alameda County and East Bay Regional Park District on April 24, 2024, by sending a claim form and letter to the Clerk's office titled Attention: Claims Division. Shortly thereafter, he received correspondence from Alameda County confirming his claims were denied. East Bay Regional Park District confirmed receipt of the tort claim via an email. East Bay Regional Park District denied his claim on July 31, 2024.

**PARTIES**

12. Plaintiff DEONTAE CHARLES FAISON (hereinafter referred to as "DEONTAE" or "PLAINTIFF") by and through his Guardian ad Litem, THERESA FLORES, is and at all times herein mentioned a citizen of the United States and a resident of the San Francisco Bay Area and a father of two son's.



*DEONTAE FAISON*

13. Defendant ALAMEDA COUNTY (hereinafter referred to as "COUNTY" or "DEFENDANTS" collectively) is and at all times mentioned herein a municipal corporation, duly authorized to operate under the laws of the State of California. Under its supervision, COUNTY operates the Alameda County Sheriff's Department. The Alameda County Sheriff's Department employs sheriff deputies and is responsible for the actions of its employees. DEONTAE believes that COUNTY is legally responsible and liable for the incident, injuries, and damages herein set forth. COUNTY proximately caused injuries and damages because of the intentional and/or negligent actions of one or more of its employees, because it breached its duty to DEONTAE to provide safety and security for the public, and because it violated public policy when its employees used excessive force against DEONTAE. COUNTY is liable for the actions of its employees through vicarious or imputed liability and Respondeat Superior.

14. Defendant EAST BAY REGIONAL PARK DISTRICT (hereinafter referred to as "DISTRICT" or "DEFENDANTS" collectively) is and at all times mentioned herein a municipal corporation, duly authorized to operate under the laws of the State of California. Under its supervision, DISTRICT operates the East Bay Regional Parks Police Department. The East Bay Regional Parks Police Department employs police officers and is responsible for the actions of its employees. DEONTAE believes that DISTRICT is legally responsible and liable for the incident, injuries, and damages herein set forth. DISTRICT proximately caused injuries and damages because of the intentional and/or negligent actions of one or more of its employees, breached its duty to DEONTAE to provide safety and security for the public, and violated public policy when its employees used excessive force against DEONTAE. DISTRICT is liable for the actions of its employees through vicarious or imputed liability and Respondeat Superior.

15. Defendant JONATHAN KNEA (hereinafter referred to as "KNEA") is and at all times mentioned

herein is an adult and a citizen of the United States and a resident of California. KNEA was employed as a full-time employee of DISTRICT as a police officer. KNEA deployed his taser into DEONTAE's back multiple times while in water and failed to render appropriate aid. At all relevant times KNEA was under an oath as a law enforcement officer to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice.

16. Defendant FALCK USA, Inc (hereinafter referred to as "FALCK ") is and at all times mentioned herein FALCK was a corporation duly organized and existing under the laws of the State of California, registered with the California Secretary of State. FALCK was and is engaged in the business of providing emergency medical services and was under a legal duty to render appropriate medical assistance in accordance with applicable laws and standards of care. On the date of the incident giving rise to this action, FALCK was dispatched to the scene for the purpose of rendering emergency aid to Plaintiff. Despite being timely notified and present at the location, FALCK failed to provide medical assistance within a reasonable time, causing Plaintiff to suffer prolonged oxygen deprivation, which resulted in irreversible brain damage and a permanent vegetative state.

17. PLAINTIFFS are ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 40 inclusive, and therefore PLAINTIFFS sue those Defendants by such fictitious names. PLAINTIFFS will amend this complaint to allege their names and capacities when ascertained. PLAINTIFFS are informed and believe, and thereupon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences alleged herein.

**STATEMENTS OF FACTS**

18. COUNTY and DISTRICT police officers have a pattern and practice of discriminating against

African Americans.

19. DEONTAE is recognizable as African American.
20. On or about April 5, 2024, DEONTAE and his friend set out to enjoy a day at Martin Luther King Jr. Regional Shoreline Park.
21. DEONTAE and his friend start the day by grabbing food at a local Wendy's, parking their car, and enjoying the warm weather at the park without incident.
22. DEONTAE and his friend, while enjoying their afternoon, were approached by East Bay Regional Parks Police Officer KNEA, who activated his lights and instructed them to sit on the car's bumper.
23. Never seeing DEONTAE operate the vehicle, KNEA immediately alleged that the tags on the vehicle they were next to were expired and claimed that the vehicle belonged to DEONTAE.
24. DEONTAE denied that he was driver of the vehicle and knowing he had not committed a crime provided KNEA with his alias.
25. KNEA then ran DEONTAE's alias through the DISTRICT system and called for backup.
26. After not being able to find the alias in the system KNEA then threatened to request a fingerprint tech sent to the scene to fingerprint DEONTAE.
27. KNEA treated DEONTAE's friend, who happened to be white, much differently.
28. For example, KNEA never asked DEONTAE's friend if she was the driver of the vehicle, he initially refrained from running her name through the DISTRICT system, nor did KNEA threaten to bring a fingerprint tech to the scene when he could not locate her name in the DISTRIC system.




*Police body-worn camera footage depicting KNEA pointing a gun toward DEONTAE.*

29. DEONTAE, scared for his life, was able to run towards a set of rocks on the bank of the nearby estuary.

30. EBRP's official policy on foot pursuits states that officers must "continuously balance the objective of apprehending the suspect with the risk and potential for injury to department members, the public, or the suspect." Officers are expected to act reasonably based on the totality of the circumstances and must recognize that immediate apprehension is rarely more important than public and officer safety. (Ex. A - Foot Pursuits - EBRPD PD Policy Manual)

31. Despite this policy, KNEA, along with other EBRP officers, disregarded these guidelines and recklessly pursued DEONATE through the park, endangering all parties involved. This incident is part of a broader pattern in which EBRP officers have a history of aggressively pursuing Black males for minor offenses, demonstrating a disregard for both departmental policy and community safety.

32. Without any announcement and failing to establish any communication with DEONTAE, KNEA deployed a taser into DEONTAE's back on the bank of the estuary right as DEONTAE was

approaching the water.




*Body-worn camera footage depicting DISTRICT Officer and KNEA Tasing DEONTAE.*

33. DEONTAE immediately collapsed but was able to get back up and walked into the estuary water.

34. As DEONTAE was knee-deep in the water, KNEA again reapplied electric force through the taser into DEONTAE's back, causing DEONTATE to collapse.




Body-worn camera footage depicting Officer KNEA Tasing DEONTAE.

35. The taser string from the DISTRICT officer and KNEA's taser remained attached to DEONTAE'S back while he was in water.




*BWC footage depicting a taser string attached to DEONTAE as he struggles in the water.*

36. KNEA administered multiple applications of electric force from the taser against DEONTAE while DEONTAE was in water.

37. The use of force by taser while in a body of water is strictly prohibited by DISTRICT General

Orders and the taser manufacturer warns against such use due to the danger it obviously poses.

38. The use of force by taser without announcement is strictly prohibited by DISTRICT General Orders.

39. KNEA did not use his taser in accordance with California POST Standards and attempted to strike DEONTAE with the taser in his head and neck region.

40. EBRP's official policy on conducted energy devises states that CED's shouldn't be used unless "the totality of the circumstances indicates that other available options reasonably appear ineffective or would present a greater danger to the officer, the subject, or others and the officer reasonably believes that need to control the individual outweighs the risk of using the devise. This includes: (f) individuals whose position or activity may result in collateral injury (e.g., falls from height, located in water,Ä¶. " (Ex. B - Conducted Energy Device - EBRPD PD Policy Manual)

41. Despite this policy, KNEA, disregarded the policy and EBRP allowed armed police officers with the power to administer lethal force near bodies of water to use such force without proper training.

42. KNEA tased DEONTAE in a manner that violated California POST standards in an attempt to unlawfully subdue DEONTAE.

43. The reapplication of electricity by KNEA incapacitated DEONTAE and caused him to fall face-first into the estuary.

44. DEONTAE, unable to control his body due to being tased multiple times, immediately began to take on water.

45. EBRP's official policy on foot pursuits states that "when a foot pursuit terminates, officers will notify the dispatcher of his/her location and the status of the pursuit termination, and will direct further actions as reasonably appear necessary, to include requesting medical aid as

needed for officers, suspects, or members of the public." (Ex. A - Foot Pursuits - EBRPD PD Policy Manual)

46. Despite this policy, KNEA, along with other EBRP officers, disregarded these guidelines and failed to request medical aid for DEONTAE and failed to render medical aid. Here there was an obvious need to train EBRP officers how to request medical aid when working near bodies of water.

47. DISTRICT Police Officers and KNEA knew that their use of the taser caused DEONTAE to be in peril and verbally stated "he is not going to make it."

48. DISTRICT Police Officers and KNEA purposefully left DEONTAE helpless in the water, failed to go in to rescue him, failed to render aid in accordance with general policies and failed to call emergency services knowing the dangers posed by DEONTAE being in the water in such a shocked state.

49. Furthermore, DISTRICT Officers and KNEA knew DEONTAE had been tased but never communicated it to anyone else on the scene.

50. At some point after the reapplication of the taser, DEONTAE regained consciousness, but was entirely disoriented.

51. COUNTY Officials, DISTRICT Police Officers, and KNEA watched DEONTAE yell for help and struggle in the frigid 50°F water for approximately 40 minutes without rendering any aid.

52. COUNTY Officials, DISTRICT Police Officers, and KNEA failed to implement training strategies necessary to get DEONTAE to safety.

53. After approximately 40 minutes without aid, DEONTAE drowned, went under the water, and floated 10 to 15 feet from the opposite shoreline of the estuary.

54. It was not until then that COUNTY and DISTRICT Officers would pull DEONTAE from the water.

55. DEFENDANTS EAST BAY REGIONAL PARK DISTRICT ("EBRPD") significantly delayed in calling for emergency medical services (EMT) despite observing DEONTAE

Deleted: ¶

Formatted: Font: Times New Roman, Font color: Black

struggle and take on water for approximately 40 minutes. As a direct result of this delay, emergency personnel were not immediately present when DEONTAE was pulled from the frigid waters of the estuary.

56. FALCK arrived at the scene and was made aware that DEONTAE was in severe medical peril. Despite this, FALCK failed to exit their vehicle for nearly 10 minutes and did not render aid until after DEONTAE had become unresponsive.

57. FALCK's ambulance was parked on-site and was informed of DEONTAE's location but failed to act with urgency. As a result of FALCK's failure to render timely medical aid, DEONTAE went without oxygen for approximately 17 minutes, causing catastrophic and irreversible brain damage.

58. Moreover, COUNTY officers and KNEA never communicated to medical personnel or anyone else that DEONTAE had been tased.

59. DEONTAE laid unresponsive, cold, and wet on the shore for approximately 15 minutes in police custody and NOT A SINGLE COUNTY or DISTRICT officer administered CPR.

60. EBRP's official policy on medical aid and response states that " whenever practicable members should take appropriate steps to provide initial medical aid "e.g., first aid, CPR, use of an automated external defibrillator (AED) in accordance with their training and current certification levels. This should be done for those in need of immediate care and only when the member can safely do so." (Ex. C – Medical Aid and Response - EBRPD PD Policy Manual)

61. Despite this policy, KNEA, along with other EBRP officers, disregarded these guidelines and failed to render any aid to DEONTAE. EBRP officers, including KNEA, were deliberately indifferent to his obvious medical needs.

**Formatted:** Font: Times New Roman, Font color: Black

**Formatted:** Font: Times New Roman, Font color: Black

**Formatted:** Space Before: 0 pt, After: 0 pt, Line spacing: Double, No widow/orphan control

**Formatted:** Font: Times New Roman, Font color: Black

**Deleted:** <#>While watching DEONTAE struggle and take on water for approximately 40 minutes COUNTY, DISTRICT Officers, and KNEA **NEVER CALLED FOR EMT or PARAMEDIC SERVICES and as a result they were not present when DEONTAE was pulled from the frigid water of the estuary.**
**It was not until after DEONTAE was in police custody and lay unresponsive on the shore of the estuary that medical personnel were called.**




*Camera footage shows DEONTAE lying unconscious after being pulled from the water.*

62. FALCK Paramedics arrived approximately 17 minutes after DEONTAE had been pulled from the water and COUNTY, DISTRICT officers, and KNEA again deliberately failed to tell FALCK paramedics that DEONTAE had been tased.

63. As a result of COUNTY, DISTRICT, and KNEA's failure to communicate DEONTAE's injuries, DEONTAE did not receive the necessary medical treatment required for his recovery.

64. DEONTAE has been in a coma and on life support ever since.



*DEONTAE lying in a coma.*

65. It was not until DEONTAE was transferred to Highland Hospital in Oakland and was examined on or about April 6, 2024, that the taser marks were identified.



*Medical image showing taser wounds in DEONTAE'S back.*

COUNTY and DISTRICT failed to properly investigate this incident in an attempt to purposefully conceal the facts of the attack on DEONTAE.

66. DISTRICT Police Officers instructed other DISTRICT officers to turn their body-worn camera sound off.

67. COUNTY and DISTRICT allowed officers to dispose of evidence including DEONTAE's clothing and the taser strings attached to DEONTAE's clothing, which proved that DEONTAE was in fact the victim of excessive force.




*Police body-worn camera footage depicting the taser string attached to DEONTAE'S clothing.*

68. COUNTY and DISTRICT purposefully allowed officers on the scene to conceal facts by failing to take witness statements from DEONTAE's friend who witnessed the entire incident.

69. While on the scene, COUNTY and DISTRICT officials did not follow investigatory protocol.

70. COUNTY and DISTRICT do not treat white citizens in the same manner they treat black citizens.

71. DEONTAE's friend, a white female, fled from police officers in the same incident and was not tased.

72. DEONTAE's friend, a white female, also was not criminally charged for her actions and was only given a citation and allowed to walk away without being formally arrested.

73. COUNTY, DISTRICT KNEA and DOES 1-40 then drafted fraudulent police reports claiming that they perceived DEONTAE to be armed with a gun during their pursuit of him.

74. COUNTY, DISTRICT, KNEA and DOES 1-40 do not draft fraudulent reports against its white citizens in the manner that it did against DEONTAE.

75. COUNTY, DISTRICT, and KNEA'S treatment of DEONTAE and his family was discriminatory in nature.
76. EBRP's official policy on bias-based policing states that officers must "provide law enforcement services and to enforce the law equally, fairly, objectively and without discrimination toward any individual or group." (Ex. D - Bias-Based EBRPD PD Policy Manual)
77. Despite this policy, KNEA, along with other EBRP officers, disregarded these guidelines and treated DEONTAE differently than his female white counterpart although they were in the same situation and circumstances. EBRP officers, including KNEA, were deliberately indifferent to the official policy and adopted a custom and practice of policing black individuals differently.
78. COUNTY and DISTRICT have failed to discipline any of the officers involved, although COUNTY and DISTRICT have a policy of suspending officers during investigations of this nature.
79. COUNTY, DISTRICT, and KNEA and DOES 1-40 had a duty to communicate the actual injuries sustained by DEONTAE to THERESSA, CINCERE, and APOLLO in a timely fashion.
80. To date COUNTY, DISTRICT, and KNEA and DOES 1-40 have intentionally concealed facts to cover up their wrongdoing.

**DAMAGES**

DEONTAE was physically, mentally, and emotionally injured as a direct and proximate result of the brutal attack on his person, including but not limited to physical injuries to his arm, legs, rights under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments.

81. DEONTAE is entitled to recover damages pursuant to the pain and suffering he endured as a result of his civil rights being violated and the tortious acts by DEFENDANTS, inclusive.
82. DEONTAE found it necessary to engage the services of private counsel to vindicate his rights under the law. DEONTAE is therefore entitled to an award of attorney's fees and/or costs pursuant to statute(s) in the event that they are the prevailing party in this action under 42

U.S.C. §§§§ 1983, 1985-86 and 1988.

**FIRST CAUSE OF ACTION**

**(Violation of the Fourth Amendment of the United States Constitution) (42 U.S.C. § 1983)**

*Against Defendant Knea and Does 1-40*

83. DEONTAE realleges and incorporates by reference EACH and EVERY PARAGRAPH of this Complaint as fully reproduced herein.

84. At all relevant times, KNEA, and DOES 1-40 acted under the color of the law by performing official duties under the laws of California.

85. The above-described acts and failure to act by KNEA, and DOES 1-40 deprived DEONTAE of the right, as provided for under the Fourth and Fourteenth Amendment of the United States Constitution, to be free from excessive and/or arbitrary and/or unreasonable force against him.

86. KNEA and DOES 1-40 viciously tased DEONTAE in the back multiple times while in a body of water without lawful justification. They further subjected DEONTAE to excessive force, thereby depriving DEONTAE of certain constitutionally protected rights, including, but not limited to:

    a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment of the United States Constitution;

87. After causing DEONTAE immediate peril KNEA and DOES 1-40 then failed to render aid in accordance with DISTRICT policy and allowed DEONTAE to drown.

88. DEONTAE was forced to endure great pain and suffering because of KNEA and DOES 1- 40's conduct.

89. KNEA and DOES 1-40's actions were the actual cause of DEONTAE'S harm; but not for tasing DEONTAE in the water numerous times and failing to provide adequate aid to DEONTAE, DEONTAE would be healthy today.

90. Further, KNEA and DOES 1-40's actions were the proximate cause of DEONTAE'S harm; DEONTAE'S injuries were evidenced immediately following DEFENDANTS' use of force on DEONTAE.

91. In as the actions alleged above, KNEA and DOES 1-40 acted with malice or reckless indifference to DEONTAE'S rights, thereby entitling DEONTAE to an award of punitive damages against KNEA and DOES 1-40.

92. By reason of the conduct of KNEA and DOES 1-40 as alleged herein, DEONTAE has necessarily retained attorneys to prosecute the present action. DEONTAE is therefore entitled to reasonable attorney's fees and litigation expenses incurred in bringing this action.

WHEREFORE, DEONTAE prays for relief as hereinafter set forth.

**SECOND CAUSE OF ACTION**

**(Monell Claim: 42 U.S.C. § 1983)**

*Against District and Does 1-40*

93. DEONTAE realleges and incorporates by reference EACH and EVERY PARAGRAPH of this Complaint as fully reproduced herein.

94. At all relevant times, KNEA and DOES 1-40 acted under the color of the law performing official duties under the laws of California.

95. The above-described acts and failure to act by KNEA and DOES 1-40 deprived DEONTAE of his right, as provided for under the Fourth and Fourteenth Amendment of the United States Constitution, to be free from excessive and/or arbitrary and/or unreasonable force against him.

96. KNEA and DOES 1-40 viciously tased DEONTAE in the back multiple times while in a body of water without lawful justification subjecting DEONTAE to excessive force. After causing DEONTAE immediate peril KNEA and DOES 1-40 failed to render lifesaving aid while DEONTAE was in the water, and then failed to administer CPR while DEONTAE was in police

custody on the shore of the estuary, thereby depriving DEONTAE of certain constitutionally protected rights, including, but not limited to:

97. The right to be free from unreasonable searches, seizures and excessive force, as guaranteed by the Fourth Amendment of the United States Constitution;

98. The right to be free from arbitrary, punitive force as guaranteed Fourteenth Amendment of the United States Constitution.

99. KNEA and DOES 1-40 acted pursuant to a widespread or longstanding practice or custom of Defendants DISTRICT. The decision to use a conducted energy weapon (CEW) against a suspect in water specifically contravenes EBRP and Axon Taser policy, accepted

100. national and state-wide practice and wantonly increased the likelihood of serious injury or death.

101. DISTRICT had a duty to adequately train, supervise and discipline their deputy officers in order to protect members of the public, including DEONTAE, from being unnecessarily harmed by their officers while working near large bodies of water.

102. DISTRICT was deliberately indifferent to such duties and thereby proximately caused injury to DEONTAE as complained herein.

103. DEONTAE is informed and believes that little, if any, action has been taken to correct these actions.

104. In actions as alleged above, DISTRICT acted with malice or reckless indifference to the rights of DEONTAE, thereby entitling DEONTAE to an award of punitive damages against DISTRICT.

105. By reason of the conduct of DISTRICT as alleged herein, DEONTAE has necessarily retained attorneys to prosecute the present action. DEONTAE is therefore entitled to reasonable attorney's fees and litigation expenses incurred in bringing this action.

WHEREFORE, DEONTAE prays for relief as hereinafter set forth.

**<u>THIRD CAUSE OF ACTION</u>**

**(Bane Act Violation – CA Civ Code § 52.1)**

*Against Knea, District, County and Does 1-40*

106. DEONTAE realleges and incorporates by reference paragraphs 1 through 85 of this Complaint as fully reproduced herein.

107. The present action is brought pursuant to §§ 820 and 815.2 of the California Government Code. Pursuant to § 820 of the California Government Code, KNEA and DOES 1-40, as public employees, are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, KNEA and DOES 1-40 were acting within the course and scope of their employment and/or agency with COUNTY and DISTRICT. As such, COUNTY and DISTRICT are liable in Respondeat Superior for the injuries caused by the acts and omissions of DOES 1-40 pursuant to § 815.2 of the California Government Code.

108. KNEA and DOES 1-40 intentionally threatened, perpetrated physical harm upon, and interfered with DEONTAE'S state and federal statutory and Constitutional rights.

109. DEONTAE'S rights which were interfered with include, but are not limited to: right to association, due process, privacy, travel and protection from bodily harm.

110. In actions as alleged above, DEFENDANTS acted with malice or reckless indifference to the rights of DEONTAE, thereby entitling DEONTAE to an award of punitive damages against DEFENDANTS.

111. By reason of the conduct of DEFENDANTS as alleged herein, DEONTAE has necessarily retained attorneys to prosecute the present action. DEONTAE is therefore entitled to reasonable attorney's fees and litigation expenses incurred in bringing this action.

WHEREFORE, DEONTAE prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**

**(Battery)**

*Against Knea, District, County and Does 1-40*

112. DEONTAE realleges and incorporates by reference paragraphs 1 through 85 of this Complaint as fully reproduced herein.

113. The present action is brought pursuant to §§ 820 and 815.2 of the California Government Code. Pursuant to § 820 of the California Government Code, DEFENDANTS, as public employees, are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, KNEA and DOES 1-40 were acting within the course and scope of their employment and/or agency with COUNTY, DISTRICT, and FILICE. As such, COUNTY, DISTRICT and FILICE are liable in Respondeat Superior for the injuries caused by the acts and omissions of KNEA and DOES 1-40 pursuant to § 815.2 of the California Government Code.

114. DEFENDANTS perpetrated an intentional, vicious physical attack on DEONTAE, and forcefully

115. tased him in the back while he was in a body of water and then failed to render aid.

116. DEFENDANTS had the requisite intent to make physical contact and inflict pain and suffering on DEONTAE.

117. DEONTAE has a right to be free from unwanted or unwarranted contact with his person and this right was violated by DEFENDANTS' actions or omissions, inclusive.

WHEREFORE, DEONTAE prays for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**

**(Negligence)**

*Against Knea, District, County, Falck and Does 1-40*

Deleted:

118. PLAINTIFFS reallege and incorporate by reference paragraphs 1-85 of the Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton or oppressive conduct by DEFENDANTS, and any and all allegations requesting punitive damages.

119. In the alternative, DEONTAE, and THERESSA, allege that KNEA, FALCK, and DOES 1-40'S negligent actions and/or negligent failure to act within the scope and course of their employment with the COUNTY AND DISTRICT, as set forth herein above, approximately caused severe physical injury to DEONTAE, THERESSA, CINCERE, and APOLLO.

Deleted: CINCERE, and APOLLO

120. The present action is brought pursuant to §§ 820 and 815.2 of the California Government Code. Pursuant to § 820 of the California Government Code, ALL DEFENDANTS, as public employees, are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, ALL DEFENDANTS were acting within the course and scope of their employment and/or agency with COUNTY, DISTRICT, and FILICE. As such, COUNTY, DISTRICT, and FILICE are liable in respondeat superior for the injuries caused by the acts and omissions of ALL DEFENDANTS pursuant to § 815.2 of the California Government Code.

**SIXTH CAUSE OF ACTION**

**(False Imprisonment)**

*Against Knea, District, County and Does 1-40*

121. DEONTAE incorporates the foregoing paragraphs by reference, as though fully reproduced herein, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton or oppressive conduct by DEFENDANTS, and any and all allegations requesting punitive damages.

122. DEONTAE claims that he was wrongfully confined and restrained at the scene and on the bank of the estuary.

Deleted: t

123. DEFENDANTS intentionally deprived DEONTAE of his freedom of movement without cause.

124. The acts of DEFENDANTS caused him to remain in the estuary for nearly 40 minutes and on the bank of the estuary for over 17 minutes without medical attention by use of physical barriers and threats of force, fraud and unreasonable duress. The restraint, confinement and

detention of DEONTAE compelled DEONTAE to go into the frigid water. DEONTAE did not volunteer to go and was harmed by these acts.

125. DEFENDANTS' conduct was a substantial factor in causing DEONTAE harm. DEONTAE has also sustained pecuniary loss resulting from the loss of comfort, society and attention.

WHEREFORE, DEONTAE prays for relief as hereinafter set forth.

**SEVENTH CAUSE OF ACTION**

**(Violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution)**

**(Due Process Clause Violation: Purpose to Harm, Deliberate Indifference to Serious Medical Need & State-Created Danger Doctrine)**

**(42 U.S.C. § 1983)**

*Against Knea and Does 1-40*

126. DEONTAE realleges and incorporates by reference EACH and EVERY PARAGRAPH of this Complaint as fully reproduced herein.

127. DEFENDANTS' above-described conduct violated DEONTAE'S rights, as provided for under the Fourteenth Amendment of the United States Constitution, to due process when they used force purposefully to harm DEONTAE. Defendant and Does 1-40 chased Plaintiff into a body of water and used a conducted energy weapon against him which wantonly increased likelihood of serious harm and death. Moreover, they did not assist him once he was injury in the water and misrepresented the cause of his injuries that they caused to medical responders. As a result they not only use force with a purpose to harm unrelated to a legitimate law enforcement objective but they placed him in a situation more dangerous than they found him (state-created danger doctrine) and failed to respond to his serious medical needs.

**EIGTH CAUSE OF ACTION**

**CAUSE OF ACTION: PROFESSIONAL NEGLIGENCE**

**(Against Defendant FALCK and DOES 1–40)**

Deleted: forcepurposefully

128. PLAINTIFFS reallege and incorporate by reference paragraphs 1–85 of the Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton or oppressive conduct by DEFENDANTS, and any and all allegations requesting punitive damages.

129. This cause of action is brought against DEFENDANT (hereinafter "FALCK") and DOES 1–40 for professional negligence arising from FALCK's failure to provide timely and appropriate emergency medical care to FAISON on the date of the incident.

130. At all relevant times, FALCK was and is a corporation licensed to do business in the State of California and registered with the California Secretary of State. FALCK was operating as a private provider of emergency medical transportation and paramedic services, and as such, owed a duty of care to individuals in need of emergency medical assistance, including DEONTAE.

131. On the date of the incident, FALCK was called to the scene of a medical emergency involving DEONTAE, who had been struggling in the waters of the estuary for approximately 40 minutes and was in obvious medical distress.

132. FALCK arrived at the scene and was informed by EBRPD officers of DEONTAE's condition and location. Despite this knowledge, FALCK failed to promptly exit their vehicle or render emergency medical care.

133. FALCK remained parked on-site for approximately ten (10) minutes and did not reach DEONTAE's location or provide aid until he had already become unresponsive.

134. As a direct and proximate result of FALCK's delay in rendering medical assistance, DEONTAE went without oxygen for approximately seventeen (17) minutes, causing catastrophic and irreversible brain damage that has left him in a permanent vegetative state.

135. At all times mentioned herein, the actions and omissions of FALCK and its personnel constituted a breach of the applicable standard of care for emergency medical professionals under California law and violated their duty to provide timely and competent medical services to DEONTAE.

136. As a result of this professional negligence, PLAINTIFFS have suffered general and special damages, including past and future medical expenses, loss of earning capacity, and ongoing costs of long-term care, all in an amount to be proven at trial.

137. This cause of action is governed by California Civil Code § 3333.2 (MICRA), including but not limited to limitations on noneconomic damages and procedural requirements applicable to actions arising from professional negligence of health care providers.

Formatted: Indent: Left: 0.63", No bullets or numbering

**JURY DEMAND**

**DEONTAE hereby demands a jury trial.**

**PRAYER FOR RELIEF**

WHEREFORE, DEONTAE prays for relief, as follows:

For general damages in a sum according to proof;

For special damages, including but not limited to, past, present and/or future wage loss, medical

expenses and other special damages to be determined according to proof;

For punitive and exemplary damages against each defendant in a sum according to proof; Any and all permissible statutory damages;

For costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and U.S.C. § 794(a);

Cal. Civ. Code § 52.1 and any all-statutory damages.

For all other relief to which the Court deems just and proper.

Dated: June 25, 2025

Respectfully submitted,

/s/ Jamir Davis
JAMIR DAVIS
J DAVIS LAW FIRM

/s/Valery Nechay

VALERY NECHAY

/s/ Patrick Buelna
PATRICK BUELNA
ADANTE POINTER
POINTER & BUELNA, LLP