UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEONTAE CHARLES FAISON BY AND THROUGH HIS GUARDIAN AD LITEM THERESA FLORES<br><br>Plaintiff,<br><br>v.<br><br>ALAMEDA COUNTY, et al.,<br><br>Defendants. | Case No. 24-cv-06059-JSC<br><br>**ORDER RE: DEFENDANT ALAMEDA COUNTY'S MOTION FOR JUDGMENT ON THE PLEADINGS & PLAINTIFF'S MOTION FOR LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 63, 66 |

Plaintiff sues Alameda County (the "County"), the East Bay Regional Parks District ("EBRPD"), and EBRPD Officers Knea and Filice, for violating his civil rights under federal and state laws. (Dkt. No. 52.)[1] Now before the Court are the County's motion for judgment on the pleadings as to all claims against it and Plaintiff's motion for leave to amend his complaint to add a new Defendant, Falck Medical Services ("Falck"). (Dkt. Nos. 63, 66.) After careful consideration of the parties' briefing, and having had the benefit of oral argument on July 31, 2025, the Court DENIES Plaintiff's motion for leave to amend and GRANTS the County's motion for judgment on the pleadings.

## BACKGROUND

### I. Second Amended Complaint ("SAC") Allegations[2]

On April 5, 2024, Plaintiff "and his friend set out to enjoy a day at Martin Luther King Jr.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] In opposition to the County's motion Plaintiff does not argue any deficiencies in the SAC have been cured by his proposed Third Amended Complaint ("TAC"). Further, he does not make any new allegations as to the County in his TAC. (*See* Dkt. No. 74.) Accordingly, the Court here recites allegations as made in the SAC.

1   Regional Shoreline Park." (Dkt. No. 52 ¶ 19.) While at the park, they "were approached by East
2   Bay Regional Parks Police Officer KNEA, who activated his lights and instructed them to sit on
3   the car's bumper." (*Id.* ¶ 21.) Officer Knea told Plaintiff "the tags on the vehicle they were next
4   to were expired and claimed the vehicle belonged to DEONTAE." (*Id.* ¶ 22.) Plaintiff provided
5   Officer Knea an alias, after which Officer Knea ran his name through the EBPRD's system and
6   called for backup. (*Id.* ¶¶ 23-24.) Not finding Plaintiff's alias in the system, Officer Knea
7   threatened to "bring a fingerprint tech to the scene," and Plaintiff, "scared for his life, was able to
8   run towards a set of rocks on the bank of the nearby estuary." (*Id.* ¶¶ 25, 28.) Officer Knea and
9   other officers pursued him through the park and, "[w]ithout any announcement and failing to
10  establish any communication with DEONTAE, KNEA deployed a taser into DEONTAE's back on
11  the bank of the estuary right as DEONTAE was approaching the water." (*Id.* ¶ 30-31.) Plaintiff
12  collapsed, but stood back up and walked into the estuary water. (*Id.* ¶ 32.) Once in the water,
13  Officer Knea "again reapplied electric force through the taser." (*Id.* ¶ 33.) The taser string
14  remained attached to Plaintiff while he was in the water and Officer Knea continued to administer
15  electric force through the taser while he was in the water. (*Id.* ¶¶ 34-35.) Plaintiff was "unable to
16  control his body due to being tased multiple times, [and] immediately began to take on water."
17  (*Id.* ¶ 43.)

18  County officers, along with Officer Knea and other EPRD officers "watched DEONTAE
19  yell for help and struggle in the frigid 50°F water for approximately 40 minutes without rendering
20  any aid." (*Id.* ¶ 50.) "After approximately 40 minutes without aid, DEONTAE drowned, went
21  under the water, and floated 10 to 15 feet from the opposite shoreline of the estuary." (*Id.* ¶ 52.)
22  Only then did County and EBPRD officers pull him out of the water. (*Id.*) Neither County nor
23  EBPRD officers requested EMT or Paramedic Services and "[i]t was not until after DEONTAE
24  was in police custody and lay unresponsive on the shore of the estuary that medical personnel
25  were called." (*Id.* ¶¶ 54-55.) And no officer communicated to medical personnel that he had been
26  tased. (*Id.* ¶ 56.) While Plaintiff lay "unresponsive, cold, and wet on the shore for approximately
27  15 minutes in police custody," no officer administered CPR. (*Id.* ¶ 57.)
28  Plaintiff "has been in a coma and on life support ever since." (*Id.* ¶ 62.)

**II.     Procedural Background**

Plaintiff filed suit in August 2024 against all Defendants. (Dkt. No. 1.) And in October 2024, he filed a First Amended Complaint ("FAC"). (Dkt. No. 20.) On December 19, 2024, the Court entered a pretrial order setting April 24, 2025 as the deadline to move to amend pleadings. (Dkt. No. 33.) EBPRD then successfully moved to dismiss the *Monell* claims against it. (Dkt. Nos. 27, 36.) The Court granted Plaintiff until February 13, 2024 to file a further amended complaint. After several stipulations to continue the amended deadline, Plaintiff finally filed the SAC, though pages were missing from his first two attempts to file, and he did not file the operative SAC until March 31, 2025. (Dkt. No. 52.) On March 19, 2025, the District and Officer Knea moved to dismiss the SAC which the Court denied. (Dkt. Nos. 48, 65, 76.)

The SAC alleges four causes of action—all state law claims—against the County: (1) a Bane Act claim under California Civil Code § 52.1; (2) a common law battery claim; (3) a common law negligence claim; and (4) a common law false imprisonment claim. (Dkt. No. 52.) Now pending before the Court are (1) Plaintiff's motion for leave to file his TAC and (2) the County's motion for judgment on the pleadings on all claims against it. (Dkt. Nos. 63, 66.) Plaintiff's motion seeks to add a new party—Falck—and a cause of action against Falck for professional negligence. (Dkt. No. 74.) The proposed TAC does not contain any new allegations against the County.

**ANALYSIS**

**I.     Motion for Leave to Amend**

"Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings." *Yates v. Auto City 76*, 299 F.R.D. 611, 613 (N.D. Cal. 2013). Rule 15(a) pertains to amendments before trial. Fed. R. Civ. P. 15(a). When, as here, the court "filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings," and that deadline has passed, the Rule 16 standard also applies. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). In such instance, a party seeking to amend a pleading "must first show 'good cause' for amendment under Rule 16(b), then, if 'good cause' be shown, the party must demonstrate that amendment was proper under Rule 15." *Id.* at

3

608 (citation omitted).  So, Plaintiff must meet Rule 16's standard to modify the scheduling order, followed by Rule 15's standard to amend and supplement.

Plaintiff has not shown good cause to modify the scheduling order.  On March 7, 2025, Plaintiff received an email from EBRPD's counsel stating "[t]he Falck records indicate that they were on scene at 18:56.  Your client was pulled out of the water at 18:58" and in looking at one officer's [body worn camera] BWC footage, "You will notice at the 19:01:38 mark on the camera, Falck Ambulance drives up to [officer] Balough as he is at his truck. … That ambulance driver does not appear at the body until 19:08:09 on that same BWC."  (Dkt. No. 66-1 at 1.)  In his brief, Plaintiff argues "[t]his is the first time Plaintiffs were made aware of Falck's presence or actions." (Dkt. No. 66 at 4.)

The March 7, 2025 email does not supply good cause.  First, there is no evidence before the Court establishing the email was the first time Plaintiff became aware of Falck's presence.  An unsupported statement in a brief is not evidence. *See Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir. 2015) ("arguments in briefs are not evidence").  Second, Plaintiff's initial complaint includes screen captures from this very BWC footage (Dkt. No. 1 at 16, 18), and he has had the footage since at least June 17, 2024 (Dkt. No. 72-1 ¶ 3).  So, well before March 7, 2025, Plaintiff was aware of Falck's presence.  *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) ("The good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action").  Third, Plaintiff attempted to file his SAC on March 14, 2025, *after* he admits he had been made aware of Falck's presence at the scene.  (Dkt. No. 44.)  He then filed a one-page motion to strike the amended complaint, as well as another attempted amended complaint on March 19, 2025.  (Dkt. Nos. 46-47.)  He later moved on March 20, 2025 to amend or correct the amended complaint again, and then finally filed the operative SAC on March 31, 2025.  (Dkt. Nos. 49, 52.)  In none of these pleadings did he seek to add Falck as a defendant despite Plaintiff's admission he knew of its involvement at that time.

In light of this record, Plaintiff has not shown good cause to modify the scheduling order to add a completely new defendant.  So, Plaintiff's motion for leave to amend is DENIED.

4

1  **II.     Motion for Judgment on the Pleadings**

2  "After the pleadings are closed—but early enough not to delay trial—a party may move for

3  judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when

4  the moving party clearly establishes on the face of the pleadings that no material issue of fact

5  remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios,*

6  *Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (citations omitted). "A motion

7  for judgment on the pleadings under Rule 12(c) is subject to the same standard as a Rule 12(b)(6)

8  motion to dismiss." *Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*, --- F. Supp. 3d ---, No.

9  22-cv-04947-PCP, 2025 WL 1407350, at *5 (N.D. Cal. May 12, 2025) (citing *Dworkin v. Hustler*

10 *Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). So, when considering a motion under Federal

11 Rule of Civil Procedure 12(c), the Court "must accept the facts as pled by the nonmovant."

12 *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 (9th Cir. 2011)

13 (citations omitted).

14 As to each claim against it, the County argues the BWC footage, as incorporated by

15 reference in the SAC, shows Plaintiff "cannot make out any viable claims against the County" and

16 the SAC should be denied without leave to amend. (Dkt. No. 63 at 13-14.) Plaintiff agrees the

17 Court may consider the BWC footage as incorporated by reference. (Dkt. No. 68 at 19-20.)

18 Because Plaintiff does not argue the footage is inaccurate or unreliable, the Court must "view the

19 facts in the light depicted by the videotape" but must also "construe any ambiguities in the video

20 footage in 'the light most favorable' to [Plaintiff]." *Mayfield v. City of Mesa*, 131 F.4th 1100,

21 1104 (9th Cir. 2025) (cleaned up).

22 **A.     Relevant Allegations Against the County**

23 The SAC alleges County officers "watched [Plaintiff] yell for help and struggle in the

24 frigid 50 [degree] water for approximately 40 minutes without rendering any aid." (Dkt. No. 52 ¶

25 50.) It was not until after Plaintiff drowned that "COUNTY and DISTRICT Officers would pull

26 [Plaintiff] from the water." *Id.* at ¶ 53.) The County argues the video blatantly contradicts the

27 allegation that County officers pulled Plaintiff from the water; instead, the video unambiguously

28 establishes that County officers never laid hands on or in any way touched Plaintiff. The video

5

1  supports the County's assertion that County officers did not pull Plaintiff from the water and
2  Plaintiff does not disagree.  Plaintiff also argued at the hearing that deputies could be seen on the
3  BWC helping to carry Plaintiff to the ambulance, but the video does not support that assertion.
4  Instead, the video reflects only EBPRD officers and EMTs are seen carrying him to the
5  ambulance.  (Dkt. No. 63 at 47 at 33:29-35:67.)  So, drawing all reasonable inferences in
6  Plaintiff's favor, the SAC plausibly supports an inference that County officers watched Plaintiff
7  struggle in the water for 40 minutes without rendering any aid.

### B. Bane Act Claim

To succeed on a Bane Act claim, a plaintiff must show "(1) intentional interference or attempted interference with a state or federal constitutional or legal rights, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67, 183 Cal. Rptr. 3d 654, 676 (2015), *as modified on denial of reh'g* (Mar. 6, 2015) (citations omitted).  "[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983." *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013).  The Act also requires a plaintiff prove the defendant acted with "specific intent to violate [his] right to freedom from unreasonable seizure." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043-1044 (9th Cir. 2018) (quoting *Cornell v. City and Cnty. of San Francisco*, 17 Cal. App. 5th 766, 801 (2017)).  A plaintiff must demonstrate the defendant committed "the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right." *Cornell*, 17 Cal. App. 5th at 803 (cleaned up).  However, "[t]hreats, intimidation, and coercion all involve affirmative acts." *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 981 (N.D. Cal. 2017), *aff'd in part, dismissed in part,* 897 F.3d 1125 (9th Cir. 2018).

#### 1. Intentional Interference with Constitutional Right

Plaintiff has not alleged facts that plausibly support an inference County officers intentionally interfered with his constitutional rights based on their failure to provide or summon medical care.  "[T]he Due Process Clause requires the provision of medical care to 'persons ... who have been injured while being apprehended by the police.'" *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463

6

U.S. 239, 244 (1983)). So, "a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment, even if the officer did not administer CPR." *Id.* (citing *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986)). But Plaintiff does not allege any facts that suggest the County had any role in apprehending Plaintiff or that he was in their custody. And he does not cite any case, and the Court is not aware of any, that requires a law enforcement officer to help someone while in another agency's custody. Furthermore, Plaintiff cites no cases holding a failure to intervene when officers do not have custody of an individual constitutes an "affirmative act" for purposes of the Bane Act. And at least one court has held, "failure to intervene does not constitute threats, intimidation, or coercion under the Bane Act." *Hernandez*, 241 F. Supp. 3d at 981. And the only court that has held otherwise did so when the officials had custody over a prisoner, which is not the case here. *M.H. v. Cnty. of Alameda*, 90 F. Supp. 3d 889, 898 (N.D. Cal. 2013) (holding "a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs in violation of his constitutional rights … adequately states a claim for relief under the Bane Act").

Plaintiff argues that at the very least County officers were "integral participants" in the unconstitutional seizure and deprivation of medical care. (Dkt. No. 68 at 23.) While Plaintiff does not identify any cases where a court has held an officer can be liable under the Bane Act through an "integral participant" theory, some courts have permitted Bane Act claims to proceed under such theory. *See, e.g. McKnight v. City & Cnty. of San Francisco*, No. 22-CV-04600-WHO, 2024 WL 847922, at *2 (N.D. Cal. Feb. 28, 2024) (holding the plaintiff's claims against a defendant on an integral participant theory "sufficient to state the section 1983 claims" meant the Bane Act claims against the same defendant "survive as well."); *Penny v. City of Los Angeles*, No. 2020-cv-07211-DMG(MAAx), 2022 WL 2069132, at *13 (C.D. Cal. May 9, 2022), *aff'd and remanded sub nom. Penny v. Azmy*, No. 22-55572, 2024 WL 489287 (9th Cir. Feb. 8, 2024) (denying summary judgment for officers sued under an integral participant theory of liability without analyzing whether such a theory was cognizable under the Bane Act). So, the Court assumes without deciding that an officer may be liable under the Bane Act based on a § 1983 integral

7

participation theory.

To be liable under § 1983 as an "integral participant," an officer "must be more than a 'mere bystander.'" *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020) (quoting *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011)); *see also Peck*, 51 F.4th at 889 ("in general, one does not subject someone to a deprivation of a constitutional right—or cause [someone] to be subjected" to such a deprivation—simply by watching others violate the Constitution") (cleaned up).  The Ninth Circuit has held there are two situations when such liability exists:

> (1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or
>
> (2) the defendant sets in motion a series of acts by others which the defendant knows or reasonably should know would cause others to inflict the constitutional injury.

*Peck*, 51 F.4th at 889 (cleaned up).  The first category "is fairly narrow." *Id.*  In *Boyd v. Benton County*, the Ninth Circuit held officers who provided armed backup liable as integral participants to the constitutional violation of another officer, who unlawfully threw a flash-bang device inside a home.  *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004).  Meanwhile, in *Hopkins v. Bonvicino*, the court held an officer who interviewed witnesses in the front yard of a house while other officers carried out an unlawful search was not an integral participant.  *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009).  In distinguishing these cases, the Ninth Circuit has explained, "simply being present at the scene does not demonstrate that an officer has acted as part of a common plan." *Peck*, 51 F.4th at 889.

Plaintiff does not allege facts that plausibly support an inference of any County officer's integral participation in Officer Knea's alleged constitutional violations.  Plaintiff does not argue, let alone allege facts, that suggest County officers had any common plan with the EBRPD officers to violate his rights. And there are no facts that suggest any County officer set in motion acts by others that caused the constitutional violation.  So, the SAC allegations do not sufficiently allege the first element of a Bane Act claim as to the County.

    2.  **Specific Intent**

"Liability under the Bane Act requires an officer to have had a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Losee v. City of Chico*, 738 F. App'x 398, 401 (9th Cir. 2018) (cleaned up). Here, because Plaintiff fails to plead the County violated his constitutional rights, he likewise fails to plead County officials did so with the requisite intent.

\* \* \*

Accordingly, Plaintiff's Bane Act claim fails as to the County, and is DISMISSED.

### C. Battery Claim

"A state law battery claim is a counterpart to a federal claim of excessive use of force. In both, a plaintiff must prove that the peace officer's use of force was unreasonable." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009). The County argues that because Plaintiff fails to allege any County official used force against him, the County cannot be liable for battery against him. The Court agrees. Plaintiff does not cite any case that suggests an officer who did not use any force against a plaintiff can be held liable for battery. So, this claim is therefore also DISMISSED.

### D.    Negligence Claim

Under California Government Code § 815.2, a public entity is liable for the negligent acts of its employees under specified conditions. "To establish the negligence of a police officer under California law," a plaintiff must plead:

> (1) the officer owed the plaintiff a duty of care,
>
> (2) the officer breached the duty by failing to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise,
>
> (3) there was a proximate causal connection between the officer's negligent conduct and the resulting injury to the plaintiff, and
>
> (4) the officer's negligence resulted in actual loss or damage to the plaintiff.

*M.H. v. Cnty. of Alameda*, 62 F. Supp. 3d 1049, 1097 (N.D. Cal. 2014) (citing *Harris v. Smith*, 157 Cal. App. 3d 100, 104 (1984)). As for duty of care, "when a state officer's conduct places a person in peril in deliberate indifference to their safety, that conduct creates a constitutional

9

claim." *Penilla v. City of Huntington Park*, 115 F.3d 707, 709 (9th Cir. 1997). And the constitutional duty to provide care is not triggered only when a person is in custody, but rather when "the state played [a role] in creating or enhancing the danger the victim faced." *Id.* at 710.

      Here, Plaintiff does not allege sufficient facts that plausibly support an inference the County owed him a duty to provide medical care. The SAC does not allege any County officer took any intentional, affirmative acts that created or enhanced the danger Plaintiff faced. While drawing inferences in Plaintiff's favor the BWC footage shows that once County officers arrived on the scene they stood by and did nothing as EBRPD officers handled Plaintiff, threw ropes at him that he could not grab, yelled instructions at him, and rendered allegedly insufficient medical aid (Dkt. No. 63-1 at 47 at 08:20-23:07), "[t]he 'danger creation' basis for a claim, by contrast, necessarily involves *affirmative conduct* on the part of the state in placing the plaintiff in danger." *L.W. v. Grubbs*, 974 F.2d 119, 121-22 (9th Cir. 1992) (emphasis added) (holding officers were liable for injury because, though they lacked custody of the plaintiff, the defendants "affirmatively created the dangerous situation which resulted in" the plaintiff's injuries); *see also Martinez v. City of Clovis*, 943 F.3d 1260, 1272 (9th Cir. 2019) (holding an officer who failed to inform the plaintiff of her rights, failed to provide her handout for domestic violence victims, and failed to arrest her abuser, was not liable to her because these "were not an affirmative act that created an actual, particularized danger.") (cleaned up); *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997) (holding officers owed a duty to the plaintiff because they "allegedly took affirmative actions that significantly increased the risk facing Penilla: they cancelled the 911 call to the paramedics; they dragged Penilla from his porch, where he was in public view, into an empty house; they then locked the door and left him there alone. And they allegedly did so *after* they had examined him and found him to be in serious medical need."); *Est. of Amos ex rel. Amos v. City of Page, Arizona*, 257 F.3d 1086, 1090-91 (9th Cir. 2001) (holding, (1) "[n]o authority supports [the plaintiff's] assertion that the police exercised 'de facto custody' over Amos by exercising geographic control over the surrounding area of the accident;" and (2) the officers were not liable under the state created danger theory because "while the State may have been aware of the dangers that Amos faced … it played no part in their creation, nor did it do anything to render

10

him any more vulnerable to them.") (cleaned up).  In the absence of any allegations plausibly supporting an inference any County officer created or enhanced the danger Plaintiff faced, the County officers did not owe Plaintiff a duty.

Because the SAC fails to allege the County took any affirmative acts to place Plaintiff in danger or enhance his danger, Plaintiff fails to allege the County owed a duty to provide medical aid, so his negligence claim against the County is also DISMISSED.

### D. False Imprisonment Claim

"The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000) (citing *City of Newport Beach v. Sasse* 9 Cal. App. 3d 803, 810 (1970)).

The SAC does not allege any facts that support a plausible inference the County took Plaintiff into custody or had custody over him.  Plaintiff's citation to § 1983 cases where courts have held officers who participate in apprehending a plaintiff but do not touch him can still be held liable for constitutional violations under § 1983 is unpersuasive as there are no allegations County officers had any role in apprehending Plaintiff. (Dkt. No. 68 at 29 (citing *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (addressing qualified immunity for a supervisor under § 1983); *Jones v. Williams*, 297 F.3d 930, 836 (9th Cir. 2002) (holding a proper jury instructions for a § 1983 integral participation claim must explain "either integral participation or personal involvement was required before a jury could find officers liable" and liability could not attach "for merely being present at the scene of the search.").)[3]

---

[3] Plaintiff also makes a passing reference to *People v. Agnew*, 16 Cal. 2d 655 (1940), but incorrectly cites the case under the citation for *Agovino v. Kunze*, 181 Cal. App. 2d 591, 595 (1960).  In *Agnew*, the defendant announced he "was making a citizen's arrest" of the plaintiff and the Court determined it was immaterial he did not "lay hands on" the plaintiff because the plaintiff's "detention was the natural consequence of defendant's announced arrest of Mr. Prouty and was clearly at his implied request and direction." *People v. Agnew*, 16 Cal. 2d 655, 659 (1940).  The SAC does not plead any facts that lead to the plausible inference that he was either in the County's custody or that the EBRPD's detention of Plaintiff was the natural consequence of any of the County deputies' actions.

11

1          Plaintiff does not allege the County intentionally confined him, but instead, as succinctly
2   summarized in his brief, "Plaintiff alleges that [the County's] deputies were present, failed to
3   intervene, and failed to summon aid while DEONTAE was in visible distress and being restrained
4   without legal justification." (Dkt. No. 68 at 29.) These allegations are insufficient to state a claim
5   for false imprisonment as to the County. Because the SAC fails to allege County officers'
6   involvement in falsely imprisoning him, the false imprisonment claim is also DISMISSED.

### E. Whether State Immunities Apply to Bar the SAC's Claims Against It

The County asserts it is immune from liability under California Government Code §§ 845.8, 846, 820.8, and 820.4. But these are affirmative defenses, and dismissal is only appropriate at the pleading stage "[w]hen an affirmative defense is obvious on the face of a complaint," *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013), or when "the defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (citing C. Wright & A. Miller, *Federal Practice and procedure*, § 1277, at 332). Here, neither case is present. The County's immunity claim based on § 845.8 depends on a finding as a matter of law that Plaintiff was "resisting arrest" or that he was "[a]n escaping or escaped arrested person," neither fact which is apparent on the face of the complaint or undisputed. Cal. Gov't Code § 845.8. Section 846 provides, "Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody." Cal. Gov't Code § 846. But the County does not explain how this immunity applies to its officers when it says Plaintiff was already arrested and in the custody of the EBRPD. Additionally, the County dedicates one sentence in its opening brief arguing § 820.8 immunity applies, which is insufficient to show the immunity is evident on the face of the complaint or undisputed. (Dkt. No. 63 at 19.) And the same is true for immunity under § 820.4.

So, the County's motion for judgment on the pleadings based on its assertion of these affirmative defenses is DENIED.

### F. Leave to Amend

"[D]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013) (quoting *Kendall*

*v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Courts may deny leave to amend when there is strong evidence of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Futility is found where "'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]'" *McWhorter v. Procter & Gamble Co.*, No. 24-CV-00806-AMO, 2025 WL 948061, at *9 (N.D. Cal. Mar. 28, 2025) (quoting *Ross v. AT&T Mobility, LLC*, No. 19-cv-06669-JST, 2020 WL 9848733, at *4 (N.D. Cal. Dec. 18, 2020)).

Here, amendment would be futile. In the incorporated by reference BWC videos, County officers are never seen to touch or physically control Plaintiff. Instead, in Officer Knea's BWC, a County officer is seen arriving on the scene about ten minutes after Plaintiff had been tased in the water, after he had swum away from the camera's view. (Dkt. No. 63-1 at 30 at 23:47.) Further, when County officers arrive on the opposite bank, they take no action at all and simply watch Plaintiff struggle and later be attended by EMTs. (Dkt. No. 63 at 47 at 15:40-33:30.) The video thus shows the County cannot be held liable for battery against Plaintiff, and given the County officers appear to be "mere bystanders," Plaintiff also cannot state a Bane Act claim against the County. *Bravo*, 665 F.3d at 1090. Further, since Plaintiff does not identify any evidence, and the video confirms, the County officers never had custody over Plaintiff, the County cannot be liable for false imprisonment either. So, in light of the BWC provided by the County and unrefuted by Plaintiff, the County has shown further amendment to permit claims against it would be futile.

At oral argument, Plaintiff insisted he could state a negligence claim against the County because the County informed the EMTs of Plaintiff's incorrect location, which caused the EMTs to be delayed by 13 minutes once Plaintiff was pulled from the water. Plaintiff does not have any direct evidence that County officers gave the incorrect location; instead, he speculates that because the EMTs arrived thirteen minutes late, and the video shows County officers speaking on phones, County officers must have given the EMTs the wrong location. But the BWC footage contradicts

13

this theory. About three minutes after Plaintiff was pulled from the water, the video shows the ambulance arrive on scene. (Dkt. No. 63 at 47 at 27:07-12.) Then, at 33:07-09, the EMT is seen approaching Plaintiff and starting to administer medical aid. (*Id.* at 33:07-15.) So, even assuming County officers at some point communicated with the EMTs, the BWC shows the ambulance arrived approximately three minutes after Plaintiff was pulled out of the water, not thirteen minutes later. (*Id.* at 23:40-27:12.) Plaintiff has no theory as to how County officers could somehow be liable for any delay by the EMTs once they arrived on scene.

Accordingly, the Court DISMISSES all claims against the County without leave to amend.

## CONCLUSION

Because Plaintiff has not shown good cause exists to modify the scheduling order to allow him to add a new defendant, his motion for leave to amend is DENIED. Further, for the reasons stated above, the County's motion for judgment on the pleadings is GRANTED without leave to amend.

This Order disposes of Docket Nos. 63, 66, & 67.

**IT IS SO ORDERED.**

Dated: August 1, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

14