**ADANTÉ D. POINTER, ESQ., SBN 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
**MARLON MONROE., SBN 251897**
**TY CLARKE, ESQ., SBN 339198**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Suite 208
Oakland, CA 94607
Tel: 510-929-5400
Website: www.LawyersFTP.com
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com
Email: TClarke@LawyersFTP.com
MMonroe@LawyersFTP.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEONTAE CHARLES FAISON BY AND THROUGH HIS GUARDIAN AD LITEM THERESA FLORES,<br><br>Plaintiff,<br><br>v.<br><br>ALAMEDA COUNTY, et al.,<br><br>Defendants. | Case No.: 3:24-cv-06059-JSC<br><br>**PLAINTIFFS' OBJECTIONS TO DEFENDANTS' COSTS** |

## I.     BACKGROUND

On April 5, 2024, Plaintiff "and his friend set out to enjoy a day at Martin Luther King Jr. Regional Shoreline Park." (Dkt. No. 52 ¶ 19.) While at the park, they "were approached by East Bay Regional Parks Police Officer KNEA, who activated his lights and instructed them to sit on the car's bumper." (*Id.* ¶ 21.) Officer Knea told Plaintiff "the tags on the vehicle they were next to were expired and claimed the vehicle belonged to DEONTAE." (*Id.* ¶ 22.) Plaintiff provided Officer Knea an alias, after which Officer Knea ran his name through the EBPRD's system and called for backup. (*Id.* ¶¶ 23-24.) Not finding Plaintiff's alias in the system, Officer Knea threatened to "bring a fingerprint tech to the scene," and Plaintiff, "scared for his life, was able to run towards a set of rocks on the bank of the nearby estuary." (*Id.* ¶¶ 25, 28.) Officer Knea and other officers pursued him through the park and, "[w]ithout any announcement and failing to establish any communication with DEONTAE, KNEA deployed a taser into DEONTAE's back on the bank of the estuary right as DEONTAE was approaching the water." (*Id.* ¶ 30-31.) Plaintiff collapsed, but stood back up and walked into the estuary water. (*Id.* ¶ 32.) Once in the water, Officer Knea "again reapplied electric force through the taser." (*Id.* ¶ 33.) The taser string remained attached to Plaintiff while he was in the water and Officer Knea continued to administer electric force through the taser while he was in the water. (*Id.* ¶¶ 34-35.) Plaintiff was "unable to control his body due to being tased multiple times, [and] immediately began to take on water." (*Id.* ¶ 43.)

Body worn camera videos from County deputies show them waiting on the opposite side of the estuary telling Plaintiff to swim across with EBRPD officers. (Dkt. No. 63-1 – Defendant's Motion for Judgment, Exhibit F - Deputy Alvarado's BWC at 00:00-13:11). After several minutes of watching Plaintiff struggle in the water, Ofc. Balogh throws throw a flotation device with a rope and deputies tell him to swim to it. (*Id.* at 8:37.) At some point, it becomes clear that Faison has lost consciousness. (*Id.* at 8:37-9:04.) Ofc. Bates entered the water and grabbed Faison, and pulled him to shore. (*Id* at 9:04-13:11.) Sgt. Rice called dispatch to send in medical. (*Id.*)

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

Plaintiff was taken to the hospital but had already suffered a cardiac arrest that left him with serious neurological damage. (Buelna Decl.)  Mr. Faison is currently bedbound, nonverbal, and continues to have a tracheostomy and feeding tube. (*Id.*)

On August 14, 2025, Defendants filed a bill of costs in the amount of $2,494.85 to recover costs from Plaintiff. Dkt. No. 87.

## II.   LEGAL ANALYSIS

Under Federal Rule of Civil Procedure 54(d), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Rule 54(d) therefore creates a "presumption for awarding costs to the prevailing party." *Draper v. Rosario*, 836 F.3d 1072, 1087 (9th Cir. 2016) (citation and internal quotation marks omitted).  However, a district court has "discretion to refuse to award costs." *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc) ("Mexican-American Educators").

"That discretion is not unlimited," and "[a] district court must specify reasons for its refusal to award costs." Id. (citation and internal quotation marks omitted).  As explained by the Ninth Circuit, "[a]ppropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247-48 (9th Cir. 2014).  This list is not "exhaustive . . . of good reasons for declining to award costs, but rather a starting point for analysis." Id. at 1248 (citation and internal quotation marks omitted).

**A. Substantial Public Importance of the Case**

Plaintiff brought forth a civil rights case for excessive force and state-created danger doctrine that left him permanently disabled. In determining whether to deny costs, courts in this district have explained that a case is considered to be of substantial importance "when the claims involved are subject to closer scrutiny or special interest by the court, or the issues raised in the litigation have ramifications beyond the parties and concerns immediately involved in the litigation." *Ayala v. Pac. Mar. Ass'n*, No. 08-cv-0119-TEH, 2011 WL 6217298, at *3 (N.D. Cal. Dec. 14, 2011).

Numerous courts in this district have found that this factor weighs in favor of civil rights plaintiffs in excessive force cases. See, e.g., *Washburn v. Fagan*, No. 03-cv-00869-MJJ, 2008 WL 361048, at *2 (N.D. Cal. Feb. 11, 2008) (finding that the plaintiff's excessive force action "raised important issues regarding how the San Francisco Police Department dealt with, and supervised, excessive force incidents"); *Godoy v. Cty. of Sonoma*, No. 15-cv-00883-WHO, 2016 WL 6663003, at *3 (N.D. Cal. Nov. 10, 2016) (determining that plaintiffs "raised important issues regarding the potential use of excessive force and retaliatory arrests against civil rights protestors by the Sonoma County Sheriff's department"); *Hunter v. City & Cty. of San Francisco*, No. 11-cv-4911-JSC, 2013 WL 6088409, at *4 (N.D. Cal. Nov. 19, 2013) (finding for the civil rights plaintiffs on this factor because the case "raised important issues regarding the handling of excessive force complaints within the San Francisco Sheriff's Department"); *Lopez v. Nguyen*, No. 13-cv-3870-CRB, 2017 WL 512773, at *2 (N.D. Cal. Feb. 8, 2017) (finding that a section 1983 claim of excessive force by a law enforcement officer "is an issue of substantial public importance").

Though Plaintiff did not prevail on the merit of his claims, the issues raised by this case were of substantial public importance with "ramifications beyond the parties and concerns

immediately involved in the litigation." *Ayala*, 2011 WL 6217298, at *3; see *Hunter*, 2013 WL 6088409, at *3 ("[T]hat a plaintiff is not ultimately successful on the merits of an issue does not mean that the issues the individual sought to redress were insignificant.").

Here, Plaintiff brought forth claims to vindicate a use of excessive force and state-created danger doctrine; constitutional violations that left him permanently disabled, unable to care for or even feed himself.

### B. Closeness and Difficulty of the Issues

The fact that Defendants prevailed at the motion for judgment stage does not mean the issues presented were not close or difficult. *See Jefferson v. City of Fremont*, No. 12-cv-0926-EMC, 2015 WL 1264703, at *3 (N.D. Cal. Mar. 19, 2015) (finding for the civil rights plaintiffs on this factor after they lost at the summary judgment stage because the issues "involved consideration of complex questions of law and fact" and the plaintiff's claims "had support and were not frivolous"). This case was rigorously litigated, several depositions were taken, and the outcome of the case was not obvious. *See Darensburg v. Metro. Transp. Comm'n*, No. 05-cv-01597-EDL, 2009 WL 2392094, at *4 (N.D. Cal. Aug. 4, 2009) (finding that the issues presented in a civil rights issue were close and difficult because "[r]esolution of [the] issues was not obvious" and the case was "vigorously litigated").

Here, Plaintiff lost on the motion for judgment because the district court found deputies had not actually pulled Plaintiff from the water or touched Plaintiff. (Dckt No. 48 at p. 5-6). "So, drawing all reasonable inferences in Plaintiff's favor, the SAC plausibly supports an inference that County officers watched Plaintiff struggle in the water for 40 minutes without rendering any aid." However, the video did show deputies were present and did not assist in trying to help Plaintiff from the water, which could arguably support a state created danger doctrine violation

under the Fourteenth Amendment. At the time of filing the complaint, Plaintiff believed that deputies were involved in pulling Plaintiff from the water and did not render medical aid or summon it.[1]

### C. Chilling Effect on Future Similar Actions

Courts have recognized that imposing costs on losing civil rights plaintiffs may have a chilling effect on civil rights litigation. "Imposing high costs on losing civil rights plaintiffs of modest means may chill civil rights litigation and the vindication of important rights under civil rights laws." *Lopez*, 2017 WL 512773, at *3. "Without civil rights litigants who are willing to test the boundaries of our laws, we would not have made much of the progress that has occurred in this nation since [Brown v. Board of Education]." *Stanley v. Univ. of S. California*, 178 F.3d 1069, 1080 (9th Cir. 1999) (internal citation omitted). The chilling effect is particularly concerning where the case raises issues of public importance and where a plaintiff lacks significant resources to prosecute his claims. *Hunter*, 2013 WL 6088409, at *4 (finding a chilling effect on future civil rights litigation where the plaintiff was of modest means and his "claim of excessive force was significant").

Here, because he does not have the funds to pay legal fees up front, Plaintiff retained counsels based on a contingency agreement. (Buelna Decl.). The chilling effect of imposing high costs on persons that have been permanently disabled by government actors is not just concerning, but must be avoided – especially against the most vulnerable of our society that do not have the resources to prosecute their claims.

---

[1] Defendant County had the body camera footage that supported Defendant's motion for judgment well before the start of the case. Yet, Defendant County waited until nearly the close of fact discovery to file a motion for judgment they could have filed in a Rule 12(b)(6) motion. Nonetheless, Defendant seeks to recover costs of purchasing a deposition transcript they could have avoided purchasing simply by filing the motion sooner. Defendants have no explanation why they waited for depositions to take place to file their motion.

### D. Plaintiff's Limited Financial Condition

"Indigency is a factor that the district court may properly consider in deciding whether to award costs." *Stanley*, 178 F.3d at 1079. "A court abuses its discretion when it awards costs against a losing plaintiff without considering the plaintiff's limited financial resources." *Darensburg*, 2009 WL 2392094, at *3 (citing Mexican-American Educators, 231 F.3d at 592; Stanley, 178 F.3d at 1079-80). "Whether the financial resources in question are of a sufficient level to deny an award of costs can be inferred from the economic circumstances of the plaintiff." *Ayala*, 2011 WL 6217298, at *2 (citation and internal quotation marks omitted).

Here, Plaintiff is permanently disabled, hospital bedridden, unable to work and unlikely to ever recover. To pay the costs associated with this case would be impossible.

### E. Economic Disparity Between the Parties

Alameda County is "a public entity with vastly greater resources" than Plaintiff, who is an individual citizen with limited financial means. *See Economus v. CCSF,* 2019 WL 3293292 (N.D. July 5, 2019); *see also Hunter*, 2013 WL 6088409, at *3 ("[T]here exists a significant economic disparity between Plaintiff and the City and County of San Francisco.") (quoting *Washburn*, 2008 WL 361048, at *2); *Godoy*, 2016 WL 6663003, at *2 (finding that the County of Sonoma and its police officers, as "public entities and employees, have significantly more resources" than the minor, indigent plaintiffs) (citing *Hunter*, 2013 WL 6088409, at *8).

Here, Alameda County, a public entity, has vastly greater resources than Plaintiff – who is permanently disabled, and cannot talk or work.

### III.     CONCLUSION

All of the aforementioned reasons, favor *not awarding* any costs to the Defendants. As such, the Court should DENY the COSTS.

/

/

/

/

Dated: August 28, 2025

Respectfully submitted,

Pointer & Buelna, LLP
Lawyers For The People


By:   /s/ Patrick Buelna
       Patrick Buelna
       Attorney for Plaintiffs