**ADANTÉ D. POINTER, ESQ., SBN 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Suite 208
Oakland, CA 94607
Tel: 510-929-5400
Website: www.LawyersFTP.com
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEONTAE CHARLES FAISON BY AND THROUGH HIS GUARDIAN AD LITEM THERESA FLORES,<br><br>Plaintiff,<br><br>v.<br><br>ALAMEDA COUNTY, et al.,<br>Defendants | Case No. 3:24-cv-06059-JSC<br><br>**JOINT LETTER REGARDING DISCOVERY DISPUTE** |

Joint Letter Re Discovery Dispute
Case No. 3:24-cv-06059-JSC

1

c:\users\pbuel\lawyers ftp dropbox\1. civil rights case files\faison\motions\faison.jtletterrefinance.10.22.25 -- for filing.docx

# JOINT LETTER

Pursuant to this Court's Standing Order, the Parties submit this joint letter on Plaintiff's motion to compel testimony from Defendants' non-retained expert Brian Chiles.

Counsel for the Parties met and conferred on Wednesday, October 22, 2025 and state their positions below:

**Plaintiff:**

On Friday, October 3, 2025, Plaintiff took the deposition of Defendants' non-retained expert Brian Chiles. Mr. Chiles appeared without an attorney although he spoke with Defense Counsel wbefore the deposition. Brian Chiles is the senior manager of forensics department at Axon Enterprise, Inc. Axon Enterprise, Inc. is a publicly traded company with over $6 billion in assets and a quarterly revenue of approximately $600 million. Axon Enterprise, Inc. draws it revenue from developing, selling and contracting with law enforcement agencies their law enforcement tools (conducted energy weapons "tasers", body worn cameras, patrol car dash cameras…etc.) throughout the nation.

Brian Chiles' position at Axon Enterprise, Inc. requires him to regularly testify both as a retained and non-retained expert on the function of their devices. He does so for a salary and testified that he also holds stock in the company. Mr. Chiles almost exclusively testifies on behalf of law enforcement agencies. In this case, Defendants identified Mr. Chiles as a non-retained expert that will provide the opinion that the taser used in this incident did not achieve neuromuscular incapacitation. He also intends to testify that the one time that the taser device indicated that it may have achieved neuromuscular incapacitation, the electrical current was transmitted through the water rather than Plaintiff's body.

Aside from the merits of this opinion, Plaintiff examined Mr. Chiles on the salary Axon Enterprise, Inc. pays him to provide testimony on behalf of their customers (law enforcement agencies). Mr. Chiles refused to provide that testimony claiming it was confidential. Plaintiff's counsel offered to go under seal for him to provide that information, and he still refused.

Plaintiff now moves to compel that information from Mr. Chiles. Mr. Chiles salary is an important indicator of his bias and credibility of his opinion.

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." Bryant v. Ochoa, 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009) (citations omitted).

The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is broad. Discovery may be obtained as to "any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case."3 Fed. R. Civ. P. 26(b)(1). "The relevance standard is extremely broad, especially in civil rights excessive force cases." James v. Hayward Police Dep't, 2017 WL 2437346, * 1 (N.D. Cal. Feb. 27, 2017) (citing Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995)).

Mr. Chiles was specifically asked by Defendant in this case to provide a report (a function that he only did at the request of Defendant). Therefore, how much Axon Enterprise pays Mr. Chiles to defend their products and their customers' use of their products is an important, relevant factor in the credibility of his opinion. Axon Enterprise, Inc. would not be in business for long if their employees were testifying that officers (their customers) had improperly used their devices.

Plaintiff has the right to argue to a jury that Mr. Chiles is motivated (and biased) by the monetary compensation from his company to provide opinions to support their customers use of their devices. The amount of the monetary compensation (if large) is a particularly compelling piece of evidence to support Plaintiff's position that Mr. Chiles' investigation is largely biased and clouded by the money his company pays him and the stock he has in the company.

Defendants claim Chiles opinion regarding NMI is unrebutted but per his own testimony metrics from the taser report suggest that NMI occurred. Although he opines the current was conducted through the water he had no idea what the metrics would show if that occurred. In fact the ideal metrics that would occur if NMI took place matched the taser report results. He admitted he did not even know if the water could conduct electricity at all. Therefore, it is almost inexplicable how he could opine that the current was conducted through the water rather than Plaintiff's body except that he is motivated by financial gain and bias.

Therefore, Plaintiff requests the Court to compel Mr. Chiles to testify to the financial compensation he receives from Axon Enterprise, Inc.

**Defendants:**

Defendants have no stake in this issue. Mr. Chiles is a non-retained expert; we do not represent him and did not represent him at deposition, nor did we object to any of the questions asked. Defendants simply do not understand the argument Plaintiff is attempting to advance. Plaintiff relies on Mr. Chiles's opinions, yet those opinions are uncontroverted and entirely consistent with every other witness and expert in the case. If his conclusions are undisputed, what possible purpose is served by claiming bias or demanding discovery into his compensation?

Chiles concluded that the Taser did not achieve neuromuscular incapacitation (NMI). This finding is echoed by every single observer and expert. Chiles, who has observed thousands of NMI

events both in person and on video, saw none here. Officers Knea and Galindo, who witnessed the deployment firsthand, also saw no NMI. Defendants' police-practices expert, Robert Fonzi, agreed that none of the five activations achieved NMI. Defendants' Emergency-medicine expert Dr. Gary Vilke reached the same conclusion. Plaintiff's own police-practices expert, Dr. Travis Norton, expressly declined to offer any opinion on NMI. Plaintiff's two medical experts—Dr. Schreiber (whose report was untimely served on October 17, as opposed to the Court's order of October 15) and Dr. Hixon—also offered none. No witnesses therefore contradict Chiles's opinions.

Against that backdrop, the insistence on probing Chiles's salary, stock ownership, or other private financial information is puzzling. Where his opinions stand unrebutted and entirely consistent with all other evidence, there is nothing to be gained from such compulsion beyond harassment.

/s/Patrick Buelna
PATRICK BUELNA
Attorney for Plaintiff


/s/ Patrick Moriarty
PATRICK MORIARTY
Attorney for Defendants