United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEONTAE CHARLES FAISON, et al.,

Plaintiffs,

v.

EAST BAY REGIONAL PARKS DISTRICT, et al.,

Defendants.

Case No. 24-cv-06059-JSC

**ORDER FOLLOWING PRETRIAL CONFERENCE**

The Court held a pretrial conference on September 15, 2026 in advance of the September 29, 2026 trial. This Order memorializes and rules on the matters discussed. The expert issues are addressed in a separate order.

## I. PLAINTIFF'S MOTIONS IN LIMINE

### A. Motion in Limine 1: To Exclude Contents of the Car and Plaintiff's Prior Criminal History (and Defendants' Motion in Limine 1.)[1]

Plaintiff moves to exclude (1) the contents of the car Plaintiff was sitting in when Officer Knea initiated the stop and (2) Plaintiff's prior criminal history. (Dkt. No. 129 at 2.)[2] Plaintiff argues that because this information was unknown to Officer Knea at the time of the stop and seizure of Plaintiff, the evidence is "irrelevant" since it "could not have informed any of his conduct during the incident." (*Id.* at 2-3.) Defendants disagree, arguing that the "evidence is relevant to Faison's motive, his conduct, and comparative fault." (Dkt. 129 at 6.)

[1] Defendants also seek to affirmatively admit this information through a separate motion. (*See* Dkt. No. 138.) Because the arguments the parties make in both motions are substantially identical, the Court addresses them together here.

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

A search of the gold F-150 pickup truck that Plaintiff was in on the day of the incident uncovered, among other things, six laptops, several credit and debit cards, two pellet guns, a folding knife, and an unmarked bottle of buspirone hydrochloride pills. (Dkt. No. 129-1 at 4-5.) At the time of the incident, Plaintiff was a convicted felon out on felon probation. (Dkt. No. 129 at 4.) Plaintiff had missed a hearing and therefore had an active bench warrant. (*Id.*)

**A. Legal Standards**

Relevant evidence is generally admissible unless otherwise prohibited by law. *See* FED. R. EVID. 402. Evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence; and [ ] the fact is of consequence in determining the action." FED. R. EVID. 401. However, under Rule 404, "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." FED. R. EVID. 404(a). And "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

**B. Analysis**

First, Defendants make a series of conclusory statements that, because Plaintiff was on probation and knew his truck was full of goods that would violate his probation, the evidence "supplies motive evidence to the jury." (Dkt. No. 129 at 10.) Defendants fail to explain why Plaintiff's motive for running from Officer Knea has any relevance to a finding of liability.

Defendants rely on *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938 (9th Cir. 2009). There, the Ninth Circuit held "where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible" even if the evidence was unknown to the officer at the moment he used force. *Id.* at 944. However, Defendants do not point to what fact is disputed that the evidence would help to resolve. This case is thus more akin to *Palmquist v. Selvik*, 111 F.3d 1332 (7th Cir. 1997), which the *Boyd* court cited as properly "upholding the magistrate judge's evidentiary ruling to exclude evidence that the victim of a police shooting wanted to be killed by the police, on the ground that the

evidence was not relevant to the objective reasonableness test, *as the events immediately prior to the use of force were undisputed*." *Id.* (emphasis added). Defendants also cite to *Knight ex rel. Kerr v. Miami-Dade County*, 856 F.3d 795 (11th Cir. 2017), in which the Eleventh Circuit approved admission of the criminal history of a plaintiff who fled from police while on parole, resulting in an excessive force lawsuit. *Id.* at 816-17. However, because the case was an appeal, the court was reviewing for abuse of discretion and did not admit the prior convictions on first principles. *See id.*

Second, Defendants argue that, even if they cannot use this evidence under the *Graham* reasonableness analysis, the evidence "assists the jury in understanding" the "factual sequence" of Plaintiff's flight. (Dkt. No. 129 at 10-11). Defendants identify no case law to support this argument (which is nearly identical to the motive argument).

Third, Defendants claim this evidence is relevant to a comparative negligence determination since "[t]hose facts bear directly on whether his flight was deliberate, whether he exercised reasonable care for his own safety, whether his decisions created or perpetuated the dangerous circumstances that followed, and the percentage of fault, if any, attributable to his own conduct." (Dkt. No. 129 at 11.) In support of this argument, Defendants cite to *Hayes v. Cnty. of San Diego*, 57 Cal.4th 622 (2013) for the proposition that "California negligence law also permits consideration of the officers' pre-force conduct as part of the totality of circumstances." (Dkt. No. 138 at 5.) However, *Hayes* focuses on the *officer's* pre-force conduct, not that of the plaintiff/victim. *See Hayes*, 57 Cal.4th at 629-32. Moreover, none of the conduct that Defendants' point to—past crimes, missing a hear, committing theft crimes—is conduct that creates negligence in the interaction between Officer Knea and Plaintiff.

Nonetheless, at oral argument Defendants better explained why the evidence is relevant to comparative negligence; namely, to explain that Plaintiff was fleeing from the officers to avoid being arrested and placed in custody and therefore continued to flee for a longer period than Plaintiff admits. In other words, the evidence counters Plaintiff's potential argument that he was fleeing in fear due to the Taser, not merely to evade arrest. As discussed at argument, some evidence may be relevant to the comparative negligence issue. *See Soto v. BorgWarner Morse*

United States District Court
Northern District of California

*TEC Inc.*, 239 Cal.App.4th 165, 202 (2015) ("The comparative fault doctrine is designed to permit the trier of fact to consider all relevant criteria in apportioning liability." (citation omitted)). The parties shall discuss whether they can stipulate to admission of certain facts that avoid any undue prejudice to either side.

### C. Motion in Limine 2: To Exclude Plaintiff Expert Dr. Schreiber from Discussing Tasers or Neuromuscular Incapacitation

Plaintiff moves to exclude solicitation of testimony from its own emergency medicine expert, Dr. Schreiber, "in regards to the areas of tasers, electronic conducted weapons and neuromuscular incapacitation." (Dkt. No. 130 at 2.) During Dr. Schreiber's deposition, he made a comment that "I don't think [Plaintiff] was successfully tased either" and that, in observing the video, Plaintiff's actions did not mirror his expectations of what a successful Taser connection would look like. (Dkt. No. 130-1 at 29-30.) These comments go against Plaintiff's theory of events.

Plaintiff argues that, because these comments exceed the scope of Dr. Schreiber's expert qualifications, they should be excluded under Rule 702. (Dkt. No. 130 at 2-4.) Defendants argue this is not an issue of gatekeeping an expert under Rule 702, but rather an issue of "whether Defendants may fully cross-examine Dr. Schreiber." (Dkt. No. 130 at 8.)

As discussed at oral argument, because Plaintiff can limit the scope of direct examination, Plaintiff does not need to ask about these topics. However, if Plaintiff does open the door to Dr. Schreiber's impressions of the Taser use, Defendants would be free to cross-examine him and reference his deposition testimony (if needed for impeachment purposes). *See* FED. R. EVID. 611(b) ("Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility. The court may allow inquiry into additional matters as if on direct examination.").

## II. DEFENDANTS' MOTIONS IN LIMINE

### A. Motion in Limine 2: To Limit Plaintiff's Negligence Theory to Officer Knea's Conduct Up to and Through the Taser Deployments

Defendants move to limit Plaintiff from arguing negligence theories based on Officer

Knea's actions after Plaintiff was already in the water in line with the Court's summary judgment motion. (Dkt. No. 139 at 1-3.) Plaintiff "agrees and does not intend to argue that Knea was separately negligent for failing to enter the water, rescue Faison, or provide or obtain medical care." (Dkt. No. 139-1 at 2.) So, there is therefore no conflict between the parties on this motion.

Plaintiff does intend to introduce Officer Knea's testimony as to why he did not enter the water "since it goes to the circumstances and environment Defendant Knea chose to use force in." (Dkt. No. 139-1 at 2.) The Court agrees Officer Knea's testimony as to why he did not enter the water is relevant to the reasonableness of the use of force.

**B. Motion in Limine 3: To Limit Plaintiff's Presence in Courtroom**

Defendants move to exclude Plaintiff from the courtroom other than an appearance in which he can be identified to the jury. (Dkt. No. 140 at 1.) At oral argument Plaintiff's counsel represented Plaintiff will be present for the beginning of the trial, and perhaps closing arguments, but not every day of trial. Defendants have no objection based on this representation.

**C. Motion in Limine 4: To Exclude Christina Vega's Taser-Causation Opinion**

Defendants move to exclude the opinion of Christina Vega, Plaintiff's treating nurse after he was recovered from the water, that Plaintiff's marks were "caused by a taser." (Dkt. No. 141 at 1-2; Dkt. No. 143 at 10.) Defendants offer both a procedural and a substantive basis for the exclusion.

**1. Procedure**

Procedurally, Defendants argue the witness disclosure for Ms. Vega under Rule 26(a)(2)(C) did not include a disclosure that Ms. Vega would testify on Tasers. (Dkt. No. 141 at 2.) Rule 26(a)(2)(C) requires a disclosure to include "the subject matter on which the witness is expected to present evidence" and "a summary of the facts or opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C). A party who learns the disclosure is "in some material respect. . . incomplete or incorrect" must supplement the disclosure. FED. R. CIV. P. 26(e). Alternately, the court can order a supplement or correction. *Id.*

Plaintiff's non-retained witness disclosure disclosed that Ms. Vega would testify about "the wounds she observed, the diagnosis she made and the treatment she provided to Faison."

(Dkt. No. 141 at 2.) The presence or non-presence of Taser marks seem to qualify as "wounds she observed" while treating Plaintiff. Further, on the last day of fact discovery Plaintiff disclosed his investigator's report with Ms. Vega's statement that the marks on Plaintiff's back "were caused by a taser." (Dkt. No at 143 at 10.)

Defendants nonetheless contend the non-retained expert disclosure did not sufficiently identify the Taser subject matter; so, they are seeking exclusion of the Taser opinion under Rule 37(c)(1). (Dkt. No. 141 at 3); *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is now allowed to use that information or witness . . . unless the failure was substantially or is harmless [or the court imposes one of three alternatives].").

Plaintiff responds that "if a party feels that the identification of an expert is insufficient, the party should first move to compel a further identification or depose the expert." (Dkt. No 141-1 at 2.) Plaintiff highlights Defendants knew about Ms. Vega's opinion at the time Dr. Vilke wrote his report in September 2025, which referenced Ms. Vega's opinion. (*See* Dkt. No. 119-3 at 15; Dkt. No. 141-1 at 2.) Therefore, Plaintiff argues that, even if the disclosure was insufficient it was "harmless under Rule 37 because Defendants had their expert review the issue and despite months to depose the nurse elected not to." (Dkt. No 141-1 at 2.)

The Court agrees that any shortcoming in Rule 26 disclosures was harmless given that Defendants were aware of the opinion, as evidenced both by the discovery evidence of Plaintiff's investigator report and the references to Ms. Vega's opinion in Dr. Vilke's report.

**2. Substance**

Substantively, Defendants claim that Ms. Vega only formed her opinion on the Taser causation retroactively, which contravenes the requirement that non-retained treating providers form their opinions in the course of treatment or, alternately, write a report comporting with Rule 26(a)(2)(B). (Dkt. No. 141 at 3-4.) Defendants identify the absence of references to a Taser in any of the hospital records written by Ms. Vega as evidence that her opinion was not contemporaneous with treating Plaintiff. (Dkt. No. 141 at 4.) Plaintiff does not address this point in its opposition to Defendants' motion. (*See* Dkt. No. 141-1.) Defendants offer two cases in

United States District Court
Northern District of California

support of their argument.

In *Goodman v. Stapes the Office Superstore, LLC*, 644 F.3d 817, the Ninth Circuit held "that a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." *Id.* at 826. The court went on to exclude testimony from treating physicians whose opinions were formed when they "reviewed information provided by [plaintiff's] attorney that they hadn't reviewed during the course of treatment." *Id*. That distinguishes *Goodman* from the facts here where there is no allegation that Ms. Vega reviewed outside materials to form her Taser causation opinion. Rather, Defendants can merely point to the absence of contemporaneous written evidence of that opinion. To the extent Defendants think the lack of contemporaneous hospital records undermines her opinion, it is—as they have claimed about multiple evidentiary issues in pre-trial—a great issue for cross-examination. *Sepe v. Gordon Trucking, Inc.*, 755 Fed.Appx. 668 (9th Cir. 2019), an unreported Ninth Circuit case, adds nothing to the analysis and mostly repeats *Goodman*.

But, Ms. Vega is not qualified to testify that the wounds were "caused by" a Taser; instead, if Plaintiff lays a proper foundation, she can testify that the wounds she observed were consistent with other wounds she has seen that she knew were caused by Tasers.

## III. TRIAL MATTERS

- Each side is limited to 12 hours to present their cases, excluding opening and closing arguments.
- Eight jurors will be selected; all will deliberate.
- The Court declines to phase the trial between liability and damages. (*See* Dkt. No. 137.)
- The parties should be provided the completed jury questionnaires by Wednesday, September 23, 2026. During voir dire, each side will have 30 minutes to orally question the jury venir. The Court will advise the jurors they should be available through October 9, 2026.
- After the jury is selected on September 29, there will be a 45-minute lunch break and then the trial will commence with opening jury instructions, opening arguments, and Plaintiff's first witness(es).

- Trial Schedule:
    - Tuesday, September 29: 8:00 a.m. to 4:00 p.m.
    - Wednesday, September 30: 8:00 a.m. to 1:30 p.m.
    - Thursday, October 1, 2026: 8:00 a.m. to 1:30 p.m.
    - Friday, October 2, 2026: 8:00 a.m. to 4:00 p.m.
    - Monday, October 5, 2026: 8:00 a.m. to 4:00 p.m.
    - Tuesday, October 6, 2026: 8:00 a.m. to 4:00 p.m.
    - Wednesday, October 7, 2026: 8:00 a.m. to 1:30 p.m.

## IV. FURTHER PRETRIAL PROCEEDINGS

The parties shall meet and confer regarding trial/evidentiary stipulations, exhibit objections, and witness lists. On or before September 23, 2026, they shall each file revised witness and exhibit lists and any stipulations they have been able to reach. Also by that date they shall each file a brief regarding the disputed jury instructions.

The Court will hold a further pretrial conference on Friday, September 24, 2026 at 1:00 p.m. via Zoom video to discuss any jurors the parties agree to excuse in advance of jury selection, along with lingering exhibit and witness issues.

This Order disposes of Docket Nos. 129, 130, 138, 139, 140, 141.

**IT IS SO ORDERED.**

Dated: September 17, 2026

JACQUELINE SCOTT CORLEY
United States District Judge



United States District Court
Northern District of California